Deborah A. Ferguson
Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6ᵗʰ Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 906-8663
daf@fergusondurham.com
chd@fergusondurham.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **RECLAIM IDAHO**, an Idaho political action committee, and **LUKE MAYVILLE**,<br><br>          Plaintiffs,<br>v.<br>**BRADLEY LITTLE**, in his official capacity as Governor of Idaho, and **LAWERENCE DENNEY**, in his official capacity as Idaho Secretary of State,<br><br>          Defendants. | Case No.:<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

1.      Reclaim Idaho requests a declaratory judgement and preliminary injunction

regarding its "Invest in Idaho" initiative, which it seeks to be included on Idaho's November 3,

2020 general election ballot. Plaintiffs ask that the Court modify Idaho's in person signature

collection requirement and the deadlines required for the gathering and presentation of collected

1

signatures for this initiative in light of the current public health emergency caused by COVID-19 and Defendant Little's ensuing emergency orders effectively shutting down the state.

## JURISDICTION AND VENUE

2.      Plaintiffs bring this action for violations of their federal constitutional rights under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 and 2202 to redress the deprivation under color of state law rights secured by the First Amendment of the United States Constitution.

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

4.      The Defendants reside in the District of Idaho, and Plaintiffs' claims for relief arose in this District. Accordingly, venue in the District of Idaho is proper under 28 U.S.C. § 1391 (b)(1) and (2).

5.      This Court has authority to enter a declaratory judgment and to provide preliminary injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 42 U.S.C. § 1983, and 28 U.S.C. § 2201 and 2202.

## PARTIES

6.      Plaintiff Reclaim Idaho is an Idaho based political action committee, registered with the Idaho Secretary of State. Reclaim Idaho advocates for candidates and initiatives that strengthen public schools, protect public lands, and extend healthcare to working families. Reclaim Idaho is responsible for circulating the "Invest in Idaho" educational funding initiative for signature and otherwise qualifying it for the ballot.

7.      Plaintiff Luke Mayville is the co-founder of Reclaim Idaho, and lives in Boise. He works to advance the goals of Reclaim Idaho and has a stake in Reclaim Idaho's ability to

express its political speech through the "Invest in Idaho" initiative, which is protected under the First Amendment.

8.     Defendant Bradley "Brad" Little is the Governor of Idaho and is sued in his official capacity. Governor Little is responsible for issuing Idaho's emergency orders banning gatherings, closing businesses and other public places, requiring that people shelter at home, and making it impossible for the Plaintiffs to collect the signatures required to place their initiative on the November 3, 2020 ballot.

9.     Defendant Lawerence Denney is the Idaho Secretary of State and is sued in his official capacity. Secretary Denney is the Chief Election Officer for the State of Idaho. Idaho Code § 34-201. It is "his responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws." *Id.* Furthermore, it is the Secretary of State's duty to "assist and advise each county clerk with regard to the application, operation and interpretation of the election laws as they apply to elections, registration of electors and voting procedures which by laws are under the direction and control of the county clerk." Idaho Code § 34-203.

## RELEVANT FACTS

### THE INITIATIVE PROCESS

10.     Idaho recognizes the right of its citizens to use popular democratic measures to make law at both the local and state-wide levels. Article III section 1 of the Idaho Constitution provides that "[t]he people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature." Subject to "such conditions and in such manner as may be provided by acts of the legislature," legal voters may initiate any legislation and cause it to be submitted to the people for a vote at a general election. Idaho Const. Art. III, sec. 1.

3

11.     In Idaho, the initiative process is governed by Title 34, Chapter 18 of the Idaho Code.

12.     The number of signatures needed to place a measure on the ballot in Idaho is equal to 6 percent of the number of registered voters as of the state's last general election. Moreover, Idaho has a distribution requirement requiring signatures to equal at least 6% of registered voters in 18 of the state's 35 legislative districts. Currently 55,057 signatures are required to meet the statewide 6% threshold for the 2020 general election. 2013 Idaho Senate Bill No. 1108.

13.     Under Idaho law, petitioners have 18 months to collect signatures after the ballot title has been granted. Signatures may not be collected after April 30 of the year in which the measure would appear on the ballot. Signatures must be filed with the county clerk by the close of business on May 1 and cannot be collected after April 30. Idaho Code § 34-1802.

14.     Each signature is verified by the county clerks and transmitted to the secretary of state. Under Idaho law, this must occur within 60 calendar days of the deadline for the submission of the signatures (May 1st). Petitions with the requisite number of signatures must be filed with the secretary of state not less than four months before the general election. *Id.*

15.     Idaho law mandates that signatures be collected in the presence of the circulator and that signers "personally" place their name on the petition. Idaho Code § 34-1807. This requirement persists despite Idaho's adoption of the Uniform Electronic Transactions Act, which provides, in relevant part, that:

(A) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

4

(B) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

(C) If a law requires a record to be in writing, an electronic record satisfies the law.

(D) If a law requires a signature, an electronic signature satisfies the law.

Idaho Code. § 28-50-107.

16.   The Secretary of State is the Chief Election Officer and "it is his responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws." Idaho Code § 34-201.

17.   In carrying out his responsibility as Chief Election Officer, the Secretary of State must prepare and distribute to the county clerks directives and instructions relating to election laws. Idaho Code § 34-202. Furthermore, it is the Secretary of State's duty to "assist and advise each county clerk with regard to the application, operation and interpretation of the election laws as they apply to elections, registration of electors and voting procedures which by laws are under the direction and control of the county clerk." Idaho Code § 34-203.

18.   Although the county clerks exercise general supervision of the administration of the election laws, they do so "[s]ubject to and in accordance with the directives and instructions prepared and distributed or given under the authority of the Secretary of State." Idaho Code § 34-206.

## RECLAIM IDAHO AND THE "INVEST IN IDAHO" INITIATIVE

19.   Reclaim Idaho is a grassroots organization designed to protect and improve the quality of life of working Idahoans. Reclaim Idaho organizes to pass citizens' initiatives and to elect candidates who believe in strengthening public schools, protecting public lands, and extending healthcare to working families

20.     Reclaim Idaho was formed in the summer of 2017 by Luke Mayville and a few other Idaho citizens with the purpose of putting Medicaid expansion on the Idaho ballot. It grew into a grassroots movement with over 2,000 volunteers in over 25 counties.

21.     In 2018, Reclaim Idaho succeeded in getting its Medicaid expansion initiative on the ballot, proving that it has the support and organizational structure necessary to advance a viable initiative. Reclaim Idaho volunteers easily surpassed the legal requirements for geographic distribution by collecting signatures from more than 6% of registered voters in well over 18 of Idaho's 35 legislative districts. They gathered the vast majority of the over 56,000 signatures needed from registered voters by the April 30, 2018 deadline. The citizens of Idaho voted overwhelmingly to pass the initiative into law.

22.     In the fall of 2019, Reclaim Idaho started a new initiative drive. It filed an "Invest in Idaho" K-12 educational funding initiative with the Secretary of State which was approved and released in October 2019.

23.     If passed, this initiative would invest $170 million annually in education in Idaho. Reclaim Idaho was operating on the organizational model that it had successfully used during the Medicaid expansion drive.

24.     In September of 2019, Reclaim Idaho began its first volunteer organizing tour for the "Invest in Idaho" initiative. Between then and early November, it had held 18 separate meetings in communities large and small across the state. These events were often covered by local media, laying the groundwork for the signature drive.

25.     From early November through the end of the year, Reclaim Idaho continued to gather signatures, and the momentum continued to build. Based on their successful experience

with the previous initiative, Reclaim Idaho's staff believed that they had more than enough time to gather the signatures.

26.     By February 15, 2020 Reclaim Idaho had 15,000 signatures. By March 12, it had doubled that number to approximately 30,000. This was well ahead of the pace set by the successful Medicaid expansion campaign.

27.     Reclaim Idaho has already submitted many of those signatures to the county clerks for verification and stands ready to immediately provide the Secretary of State with the 10,593 verified signatures it has collected thus far.

### THE GLOBAL COVID-19 PANDEMIC AND THE SEVERE BURDEN PLACED ON RECLAIM IDAHO

28.     On January 30, 2020, the World Health Organization declared that the novel coronavirus (COVID-19) constitutes a Public Health Emergency of International Concern.

29.     On March 13, President Trump declared that the country was in a state of emergency because of the rapid spread of COVID-19.

30.     On March 13, officials from the Idaho Department of Health and Welfare announced the first confirmed case of COVID-19 within the state of Idaho. On the same day, Defendant Little issued a "proactive emergency declaration."

31.     On that same day, Reclaim Idaho emailed all supporters with guidelines for continuing to gather signatures. These included, in part, avoiding shaking hands, using sanitizer, wiping down clipboards before and after a signature gathering shift, allowing signers to keep disposable pens.

32.     COVID-19 is especially dangerous to those above the age of 65. Reclaim Idaho's most active volunteers are retirees in that age group.

33.     Leaders of Reclaim Idaho began receiving emails from volunteers expressing concern about continuing. For example, on March 13 retired Court of Appeals Judge Karen Lansing, an especially dedicated and active volunteer, indicated that "[a]s important as the initiative is, I reluctantly conclude that it is outweighed by my responsibility to avoid possibly putting others at risk."

34.     Public spaces for signature gathering quickly closed. The Meridian Public Library shut down on March 14. The Boise Public Library followed suit on March 16. The next day, the DMV closed. Libraries and DMVs had proven to be the most promising public locations for volunteers to collect signatures.

35.     Reclaim Idaho explored all other avenues between March 13 and March 18 that would allow it to continue collecting signatures, but it struggled over those five days to adapt to rapidly changing circumstances. For example, it considered "drive through" signature collection stations, but that conflicted with the six-foot distance recommendation.

36.     On March 16, Reclaim Idaho Executive Director Rebecca Schroeder emailed Andrew Mitzel, a member of Governor Little's staff, to inquire whether Reclaim Idaho could gather signatures electronically. Mitzel referred her to the Secretary of State's Office, which responded that "there is no statute allowing electronic signatures for petitions in Idaho Statutes 34, Title 18." Schroeder then turned back to Mitzel, who informed her that the Governor would not be taking any executive action to allow for electronic signatures. Plaintiff Luke Mayville on behalf of Reclaim Idaho also drafted a bill to temporary modify the signature collection requirements in light of the pandemic, and approached leadership in the Legislature, which expressed no interest in it.

37.     After exhausting all possibilities to move forward, Reclaim Idaho was forced to suspend its campaign on March 18.

38.     On March 25, Defendant Little signed an "extreme emergency" declaration and his Department of Health and Welfare issued a statewide stay-at-home order. The order required all non-essential workers throughout the state to remain in their homes, closed all non-essential businesses, and prohibited all non-essential gatherings. A violation of this order was a misdemeanor.

39.      The order included no exceptions for initiative gathering or other First Amendment activities.

40.     Governor Little later extended the order through April 30.  Coincidentally, that was the deadline for Reclaim Idaho to submit the signatures for the "Invest in Idaho" initiative.

41.     Because of the presence of the pandemic in Idaho, the restrictions on businesses, the prohibitions on gatherings, the distancing requirements, and the mandatory stay at home order, it was impossible for Reclaim Idaho to solicit the signatures needed to support the "Invest in Idaho" petition required to place the initiative on Idaho's November 2020 election ballot.

42.     As such, Idaho law, together with the COVID-19 outbreak and Defendants' orders, directly caused an injury-in-fact to the Plaintiffs and their First Amendment rights. The First Amendment is made applicable to the states through the Fourteenth Amendment

43.     The Plaintiffs' injuries are traceable to the Idaho laws requiring submission of petition signatures by May 1 and in person signature collection during the COVID-19 pandemic, and Defendant Little's orders described in this action.

### CAUSE OF ACTION- FIRST AMENDMENT VIOLATION

44.     All previous paragraphs and allegations are incorporated herein.

9

45.     Under present circumstances, Idaho's ballot-access requirements for the "Invest in Idaho" initiative for Idaho's November 3, 2020 election violate rights guaranteed to these Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

46.     Defendant Little's emergency stay at home orders have not only placed an undue burden on Reclaim Idaho to comply with existing Idaho law, they have made it impossible to collect signatures within the time period prescribed by statute and thereby violated rights guaranteed to these Plaintiffs by the Due Process Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

47.     Defendant Denney's refusal to exercise his authority as the Chief Election Officer by granting exceptions to the onerous requirements for initiative ballot qualification have not only placed an undue burden on Reclaim Idaho to comply with existing Idaho law, they have made it impossible to collect signatures within the time period prescribed by statute and thereby violated rights guaranteed to these Plaintiffs by the Due Process Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

48.     A real and actual controversy exists between the parties.

49.     Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

50.     Defendants were acting under color of law.

51.     Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court:

10

A.      Declare that the application of I.C. § 34-1802 on the facts and circumstances presented here violates the U.S. Constitution by unduly burdening the initiative process;

B.       Declare that the application of I.C. § 34-1807 on the facts and circumstances here violates the U.S. Constitution by unduly burdening signature gathering efforts in support of the "Invest in Idaho" initiative;

C.      Issue a preliminary injunction enjoining the enforcement of I.C. § 34-1802 and I.C. § 34-1807 for as long as necessary to remove the undue burden on the Plaintiffs;

D.      Issue a preliminary injunction extending the deadline to submit petition signatures to the county clerks for verification to a date that does not unduly burden the Plaintiffs;

E.      Issue a preliminary injunction extending the deadline to submit petition signatures to the Secretary of State to a date that does not unduly burden the Plaintiffs;

F.      Issue a preliminary injunction to permit the electronic circulation of the initiative and to the State to accept electronic signatures;

G.      Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

H.      Grant such other and further relief as the Court deems just and proper.

I.      The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

Dated this  6th day of June 2020.


/s/ Deborah A. Ferguson

/s/ Craig H. Durham

Ferguson Durham, PLLC


Attorneys for Plaintiffs