LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation Division

ROBERT A. BERRY, ISB #7442
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone:     (208) 334-2400
Facsimile:      (208) 854-8073
robert.berry@ag.idaho.gov
megan.larrondo@ag.idaho.gov

      Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RECLAIM IDAHO, an Idaho political action committee, and LUKE MAYVILLE,<br><br>    Plaintiffs,<br><br>vs.<br><br>BRADLEY LITTLE, in his official capacity as Governor of Idaho, and LAWERENCE DENNEY his official capacity as Idaho Secretary of State,<br><br>    Defendants. | Case No. 1:20-cv-00268-BLW<br><br>**NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.A.P. 8** |

### NOTICE REGARDING COURT DECISION MADE JUNE 23, 2020

At the close of the hearing on June 23, 2020, the Court instructed the State to accept, on the eve of the upcoming elections, one of two options as a remedy to plaintiffs' ("Reclaim Idaho") motion for preliminary injunction: (a) place Reclaim Idaho's education funding initiative on the

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 1

November 3, 2020 ballot without meeting any of the statutory prerequisites for qualifying for the ballot or (b) allow Reclaim Idaho an extension of 48 days to obtain signatures, and allow signatures to be collected electronically through DocuSign, requiring creation of an entirely new signature collection and verification process without any statutory procedure or guidance.

As previously argued, neither option is acceptable to the Governor nor Secretary of State pursuant to United States Supreme Court precedent and Idaho law. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). Reclaim Idaho did not suffer a First Amendment violation here–its injury was caused by its own delay and, as Reclaim Idaho and the Court acknowledge, the COVID-19 pandemic. Moreover, when faced with a society-threatening epidemic, a state may implement emergency measures that temporary curtail constitutional rights so long as the measures have some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *In re Abbott*, 954 F.3d 772, 785 (5th Cir. 2020); *see also Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 358 (1905) (rejecting a claim that Massachusetts's compulsory vaccination law, enacted in response to a smallpox epidemic, violated the defendant's Fourteenth Amendment right "to care for his own body and health in such way as to him seems best.") The court in *Abbott* also noted that: "*Jacobson* instructs that all constitutional rights may be reasonably restricted to combat a public health emergency." *Id.* at. 786. That is what occurred here.  Now, seven weeks after they missed their deadline to submit signatures, and long after temporary restrictions protecting public health were relaxed, plaintiffs object that the temporary restrictions violated their right to gather signatures.

Even if a First Amendment violation occurred, which it did not, the Court's options are beyond what may permissibly be ordered or what is reasonable under these circumstances.

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 2

The Governor and Secretary of State cannot accept option (a) because the signature percentage and geographic distribution requirement for ballot initiatives are not met. Idaho Code § 34-1805; *see also Isbelle v. Denney*, Case No. 1:19-cv-000093-DCN, 2020 WL 2841886 (D. Idaho June 1, 2020). Plaintiffs' evidence demonstrates neither element has been met. Moreover, certifying the initiative would violate other provisions in Idaho law, such as those requiring verification of signatures and those allowing argument or rebuttal as required under Idaho law. *See* Idaho Code §§ 34-1812A, 1812B.

The Governor and Secretary of State cannot accept option (b) because electronic signature gathering is not allowed under Idaho law and will be extremely disruptive to the State's preparation for the August and November elections. Idaho Code § 34-1807. Wholesale changes to the initiative process cannot be made pursuant to *Purcell* and *Republican Nat'l Comm.*, S. Ct. at 1207. Defendants identified the issues and disruption that will be caused by having to adopt a whole new method of signature verification in their opposing brief and as further explained in the Declarations and Supplemental Declarations of Phil McGrane and Jason Hancock. (See Dkts. 8-1, 8-2, 11-2, 11-3.) More specifically, the Supplemental Declaration of Mr. Hancock shows that prospective voters who register to vote online do not "attest" to their identity by electronically signing their voter registration. (Dkt. 11-2.) They provide several points of personal information, many of which are nonpublic, including their driver's license number, social security number and date of birth. When the registered voter then requests an absentee ballot (whether electronically or by filling out an absentee ballot request form), and they receive their absentee ballot, they must physically sign the affidavit on the back of the absentee ballot return envelope. (*Id.*) Upon receiving the completed absentee ballot, the county clerk then compares the physical signature on the back of the envelope with the physical signature on record.  The process is similar for an in-person election, in that the

voter signs the poll book when they come to the polls to vote (in addition to showing their photo ID), and this physical signature can be compared to the physical signature on file. Accordingly, the framework under option (b) remains untenable.

In light of the foregoing, defendants cannot choose either option, because to do so would be to knowingly violate their oaths to uphold the law. The Court should consider whether an injunction is warranted in light of this response. To the extent the Court orders the Governor and the Secretary of State to take steps to implement one of the options above, or a substantially similar option, the Governor and Secretary of State ask that the Court stay that order pending an appeal to the Ninth Circuit. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8.

The Court should grant such stay, which is within the Court's discretion, because the Governor and Secretary of State can show an entitlement to a stay upon the circumstances of this case. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Governor and Secretary of State have a strong likelihood of succeeding; the Governor and Secretary of State, in their official capacities as elected, constitutional officers of the State of Idaho, will be irreparably injured; the balance of hardships favors a stay; and the public interest lies in upholding a voting system enacted by the people's representatives in the Idaho Legislature. *See Nken*, 556 U.S. at 434.

**A.     The Governor and Secretary of State's strong likelihood of success.**

There is a strong likelihood of success for the Governor and Secretary of State if the Court orders them to accept Reclaim Idaho's initiative or permit them another 48 days to collect electronic, DocuSign signatures. Idaho "has a compelling interest in preserving the integrity of its election process. Confidence in the integrity of our electoral processes is essential to the function of our participatory democracy." *Purcell*, 549 U.S. at 4. Both of the proposed remedies would seriously undermine this compelling interest.

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 4

The State has the authority to establish its procedures with respect to ballot initiatives. *E.g.*, *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam). Content-neutral initiative requirements that are reasonable and nondiscriminatory should be subjected to rational basis review. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). Severe restrictions "such as exclusion or virtual exclusion from the ballot" should be judged under strict scrutiny. *Thompson*, 959 F.3d at 809 (citing *Burdick*, 504 U.S. at 434). Cases in between weigh the burden imposed by the state against the state's interests, and take into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* (quoting *Burdick*, 504 U.S. at 434) (internal quotation marks and citation omitted).

Here, Reclaim Idaho cannot show a severe burden by any state action. Prior to the issuance of the Orders to Self-Isolate on March 25, 2020, Reclaim Idaho had already suspended its campaign. Even taking into account the Orders to Self-Isolate, which Reclaim Idaho note were in effect from March 25 through April 30, this approximately five-week time frame has not been shown to be a severe burden upon the total 18 months Reclaim Idaho had to collect signatures or even the shorter, six-month period Reclaim Idaho voluntarily chose.

Nor did Reclaim Idaho ever inquire whether they could gather signatures under the Order to Self-Isolate, which incorporated federal standards that allowed "Elections personnel to include both public and private sector elections support" to continue to operate during the term of that Order. *See* attached as Exhibit A (March 25 Stay-Home Order), ¶¶ 8.f and 8.k (incorporating the Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response issued by the Cybersecurity Infrastructure Security Agency of the United States Homeland Security ("CISA Guidance") dated March 19, 2020); *see also* attached as Exhibit B 8.f

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 5

and 8.k (incorporating the CISA Guidance dated March 28, 2020). The existence of this exemption further demonstrates the absence of any intrusion on Reclaim Idaho's rights by any action of the State.

The Orders to Self-Isolate at issue here were validly promulgated orders. The U.S. Supreme Court has explained that the exercise of "all rights" are subject to "reasonable conditions" that the government deems "essential to the safety, health, peace, good order, and morals of the community." *Jacobson*, 197 U.S. at 26. This limitation provides the government the power to protect the public health so long as the regulation has a real or substantial relation to public health, and is not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. Here, the Orders to Self-Isolate were neutral laws of general applicability. There was a real and substantial relation to public health with these orders, given the concern over the spread of COVID-19.

Requiring the State to implement the Court's selected remedy, whichever one it is, impinges on the State's power to control its elections. *Cf. Esshaki v. Whitmer*, , No. 20-1336, 2020 WL 2185553 at *2 (6th Cir. May 5, 2020) (citing *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)). If the Court orders the Governor and Secretary of State to implement the first option, it will require the State to set aside its legislatively enacted procedures for ensuring voter integrity and those that balance the voters' voice throughout the State. If the Court orders the Governor and Secretary of State to implement the second option, it would completely re-write Idaho election procedures by: requiring the State to accept electronic signatures that lack the same ability to verify qualified elector status as compared to physical signatures, (*see* Dkt. 11-2); imposing an exceptional, if not impossible, burden on clerks' offices around the state to attempt to verify the signatures that are then presented to them in mid-August, (*see e.g.,* Dkt. 11-3); and eliminating the statutory process

to allow public argument and rebuttal, which by law is required to be complete by August 1, 2020, *see* Idaho Code §§ 34-1812A, 1812B.

Even if this Court applies the framework from *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) and *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), the recent Arizona case, *Arizonans for Fair Elections v. Hobbs*, No. CV-20-00658-PHX-DWL, 2020 WL 1905747 (D. Ariz. Apr. 17, 2020), is instructive. In that case, the district court concluded that the plaintiffs had not shown that a reasonably diligent proponent could not gain a place on the ballot. *Id.*, 2020 WL at *11. Here, the Governor and Secretary of State have already outlined how Reclaim Idaho was not diligent, and how unlike the plaintiffs in the *Fair Maps Nevada v. Cegavske* case, Reclaim Idaho failed to take action before the expiration of the deadline to get their initiative on the ballot this year. *Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018 (D Nev. May 2, 2020).

There are some other issues that are worth noting with respect to the Governor and Secretary of State's strong likelihood of success. First, Reclaim Idaho did not seek prohibitory injunctive relief, but instead sought mandatory injunctive relief. Mandatory injunctions order a "party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "[A] mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)) (footnote omitted). Courts should deny requests for mandatory injunctions "'unless the facts and law clearly favor the moving party.'" *Id.* (quoting *Stanley*, 13 F.3d at 1320). To put it differently, the "burden here is doubly demanding: Because [Plaintiffs] seek [] a mandatory injunction, [they] must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely

to succeed." *Id.* The Governor and Secretary of State note that they believe Reclaim Idaho has not met its burden for a mandatory injunction.

Second, Reclaim Idaho has asked this Court to provide relief based upon the Orders to Self-Isolate, which were rescinded as of April 30, more than a month before plaintiffs filed their lawsuit. (Dkt. 1, ¶¶ 38-40; 46.)  Rather than timely seeking relief from the Orders, Reclaim Idaho took no action while the Orders were in force.  The relief they are thus requesting is retroactive in nature. But the *Ex parte Young* exception to the Eleventh Amendment allows federal courts to grant prospective injunctive relief "to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citation omitted). The U.S. Supreme Court has "refused to extend the reasoning of *Young*, however, to claims for retrospective relief." *Id.* (citations omitted). *Nor* are declaratory judgments generally available in circumstances such as this case. *Id.* at 73-74. And for this reason, plaintiffs' complaint is non-justiciable.

Third, the initiative process gave Reclaim Idaho up to 18 months to obtain the required number of signatures. There has been no showing or claim that the 18-month entitlement has been impermissibly burdened; rather Reclaim Idaho's own suggestion to the Court that they could have obtained the necessary signatures in a month-and-a-half shows that they could have met the statutory deadline had they acted diligently and begun the process earlier. Although Reclaim Idaho is unhappy that it was unable to meet the deadline for the process to get on this year's ballot, they have not argued for or cited any authority for the proposition that they have a First Amendment right to be on *this year's* ballot, especially where they chose not to use the process readily available to afford them more time

For these reasons, there is a strong likelihood of the Governor and Secretary of State's success in this matter.

**B.      Irreparable injury.**

Both of the options presented by the Court enjoin Idaho law, will create confusion amongst Idaho voters, and put at significant risk the State's ability to prepare for, and thus the integrity of, the upcoming August and November elections. If the Court orders the Governor and Secretary of State to implement one of the options that the Court has proposed, then there will be an irreparable injury to the voting system established by the Legislature, as that system would be disregarded in favor of the system or processes established by the Court.  Unless the statute is unconstitutional, enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . would seriously and irreparably harm [the State]." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

By requiring that Reclaim Idaho's initiative be placed on the ballot with no further signature gathering or verification, the Court would be eviscerating Idaho's requirement of district and voter representation found in Idaho Code § 34-1805. The Court would also enjoin the processes chosen by the Idaho Legislature to ensure voter integrity, as applied to the circulators, the county clerks (who are not parties to the action), and the Secretary of State. Idaho Code § 34-1807; *see also* Idaho Code § 34-1802.

By requiring that Reclaim Idaho be permitted another 48 days to gather signatures, and to gather signatures through DocuSign, the Court will enjoin certain provisions of Idaho law, created an extremely burdensome, if not impossible, timeline for the county clerks, and will overlook and effectively enjoin other provisions of Idaho law providing for public input.

Granting another 48 days for Reclaim Idaho to gather signatures *and* requiring Idaho to accept electronic signatures would enjoin enforcement of Idaho's April 30 deadline, Idaho Code § 34-1802(1); and enjoin enforcement of Idaho's requirement for the circulator to collect

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 9

signatures on a sheet and certify that such was done in his or her presence, Idaho Code § 34-1807(1). It would place an exceptional burden on the county clerks to verify, to the extent they can, any signatures submitted in a matter of few weeks, during a pandemic and during preparations for the August and November elections, when they normally have 60 days to do such verification. *See* Idaho Code § 34-1802; Dkt. 11-3. It would remove certification and verification factors that the State was able to use with the recent mail-in primary election. (Dkt. 11-2.) And it will effectively eliminate the argument for and against the initiative that Idaho law would otherwise require by July 20, since it would be unknown until late August or September whether the initiative had qualified.

Other courts have recognized the merits of the in-person requirement in an initiative process, and expressed great concern about changing a procedure so close to the election. The Sixth Circuit in *Thompson* recognized that it is the States that "have the ability to choose among the many permissible options when designing elections." *Thompson*, 959 F.3d at 812. It noted the concerns in that case were magnified because the procedure offered by the plaintiffs threatened "to take the state into uncharted waters". *Id.* Because electronic signatures, even if they proved workable, could "also post serious security concerns and other, as yet unrealized, problems", the court noted that the choice to adopt electronic signatures was with the state officials, not the courts. *Id.* The court also recognized the U.S. Supreme Court's warning to not change state election rules as the election approached. *Id.* at 813 (citing *Republican Natl. Comm.*, 140 S. Ct. at 1207; *Purcell*, 549 U.S. at 4-5). The Nevada U.S. District Court likewise took into consideration the *Purcell* principle in the *Fair Maps Nevada* case. *Id.*, 2020 WL 2798018 at *16. It also held that Nevada's in-person requirement survived strict scrutiny by being narrowly tailored to achieve the state's compelling interest of fraud prevention. *Id.* at *16-17. Consistent with these courts' reasoning,

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.AP. 8 - 10

requiring Idaho to adopt and use electronic signatures will irreparably harm Idaho's electoral system.

In short, either option enjoins the Governor and Secretary of State from effectuating the voting system provided by Idaho law, enacted by the Idaho Legislature. Such action is irreparable injury. *Maryland v. King*, 133 S. Ct. 1 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). Without a stay, Idaho's electoral system would be disrupted and displaced. *Cf. Lair v. Bullock*, 697 F.3d 1200, 1214-15 (9th Cir. 2012) ("[B]ecause of the likely disruption to the election and the untold, irreversible consequences that might result, the State of Montana has satisfied its burden of showing a probability that irreparable harm will occur.").

**C.    The substantial injury to Idaho's electoral system from the Court's proposed remedies outweigh any injury to Reclaim Idaho, the party that caused any emergency.**

There will be actual, significant irreparable injury to Idaho by either of the Court's options because Idaho's duly enacted laws regarding the initiative process will be enjoined by order of the Court and replaced with a judicially-created procedure. In balancing the harms, the Court should consider equitable principles. *See Lair*, 697 F.3d at 1215.

Any harm Reclaim Idaho might incur by a stay of the Court's order, to the extent it can be blamed on an entity, is largely attributable to Reclaim Idaho. It filed this lawsuit more than a month after the deadline for submitting signatures, more than two months after the Order to Self-Isolate was issued, more than a month after the Order to Self-Isolate (as amended) was rescinded, and more than two-and-a-half months after Reclaim Idaho had itself decided to stop gathering signatures. Its lawsuit came mere weeks before the county clerks would otherwise be required to

NOTICE AND MOTION TO STAY PURSUANT TO F.R.C.P. 62(d) AND F.R.A.P. 8 - 11

complete their signature verifications, mere weeks before Idaho's voters would be allowed to have their voice heard through arguments in favor and against the initiative, and just months before the ballots are to be printed and the initiative and arguments for and against it would be communicated to all households across the great State of Idaho.

In sum, any perceived harm to Reclaim Idaho from it not being able to get on this year's ballot is due to its own lack of diligence in failing to bring this matter to the Court's attention before the deadline for filing signatures. That deadline is meant to ensure a process occurs to instill integrity in the electoral system's initiative process, and a process that allows Idaho voters input on the initiative. Moreover, Reclaim Idaho's substantial delay has rendered it impossible to grant it an extension without thoroughly interfering with Idaho's election process.  As a result, the Court's proposed order will cause serious harm to the State's election system, on the eve of the election, and set aside the process that the Idaho Legislature created.

**D.     The peoples' interest in an electoral system that maintains integrity and that is established by their representatives (both in the House and Senate) of the Idaho Legislature.**

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 7.

There can be no doubt that the Governor, the Secretary of State, and the State of Idaho have a strong interest in ensuring that Idaho's citizens have an electoral system they can be confident in. Idaho's constitutional right to put forward an initiative is bounded by the fact that the people granted power to the Idaho Legislature to arrive at the conditions and process for proposing such an initiative. Idaho Const. art. III, § 1. The Idaho Legislature, concerned by its finding of "incidents of fraudulent and misleading practices in soliciting and obtaining signatures on initiative …

petitions" as well as finding that false signatures had been made on such petitions, sought to ensure that an integral election system existed. Idaho Code § 34-1801.

To be sure, the Idaho Legislature enacted penalties for those who do commit wrongful acts. *E.g.,* Idaho Code §§ 34-1814 – 34-1822. But the Idaho Legislature also wanted to ensure integrity in the system in the first place. Idaho's electoral system balances the ability of the initiative proponent to circulate the petition and gather signatures, with the ability of the county clerks to verify signatures, and certify the numbers to the Secretary of State, so that the Secretary of State can also collect arguments in favor and against the initiative, with rebuttals, and so that the Secretary of State can inform Idaho's households of the initiative and the argument advanced by competing sides. Idaho's Legislature also wanted to ensure balance in the voice of Idahoans in the process of getting the initiative on the ballot, requiring that at least six percent of qualifying electors in 18 of Idaho's 35 legislative districts signed the petition, and at least six percent of all qualifying electors signed the petition, each based upon the numbers of qualified voters of the last general election for that district and for the State respectively.

This is a sound system that Idaho has established. A system that its citizens can rely upon. A system that its citizens can have confidence in. And a system that was developed through representational process. The public's interest weighs heavily in having a system that can ensure integrity. The Court, if it were to order the Governor and the Secretary of State to adopt one of the two options it presented, would be replacing the process that the peoples' representatives created to ensure that integrity, and would set aside the balance the Idaho Legislature struck. The public interest favors a stay.

## CONCLUSION

The Governor and Secretary of State cannot choose either option the Court proposed as remedies without violating their duties to uphold the law. If the Court chooses to award one of the proposed remedies, the Governor and Secretary of State request that the Court stay its order pending an appeal.

DATED: June 26, 2020.

>                STATE OF IDAHO
>                OFFICE OF THE ATTORNEY GENERAL
>
>
> By:   */s/ Robert A. Berry*
>                ROBERT A BERRY
>                Deputy Attorney General

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the CMF/ECF system which sent a Notice of Electronic Filing to the following persons:

| Deborah A. Ferguson | Craig H. Durham |
|---|---|
| daf@fergusondurham.com | chd@fergusondurham.com |

>                */s/ Robert A. Berry*
>                ROBERT A BERRY
>                Deputy Attorney General