**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 1 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RECLAIM IDAHO, an Idaho political action committee; LUKE MAYVILLE, | No.  20-35584 |
| Plaintiffs-Appellees, | D.C. No. 1:20-cv-00268-BLW |
| v. | MEMORANDUM* |
| BRAD LITTLE, in his official capacity as Governor of Idaho; LAWERENCE DENNY, in his official capacity as Idaho Secretary of State, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted August 13, 2020
Anchorage, Alaska

Before:  RAWLINSON, MURGUIA, and R. NELSON, Circuit Judges.
Dissent by Judge R. NELSON

Reclaim Idaho seeks to place an initiative on the November 2020 ballot (the

"Initiative").  To place the Initiative on the ballot, Idaho law requires Reclaim Idaho

to file a petition with the Idaho Secretary of State signed by six percent (6%) of

---

*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

eligible voters in the last general election in at least eighteen (18) of the thirty-five (35) legislative districts, as well as at least six percent (6%) of the total qualified electors statewide.  Idaho Code §§ 34-1802–05.  Importantly, the proponents must obtain these signatures in person (the "In-Person Signature Requirement").  *Id.* § 34-1801A(2).  Therefore, to place the Initiative on the November 2020 ballot, Reclaim Idaho was required to submit 55,057 signatures by May 1, 2020 (the "Deadline Requirement").  The Secretary of State then has until September 7, 2020 to file the finalized ballot with each county's clerk.  *Id.*  § 34-909(1), 34-603.

On June 6, 2020, Reclaim Idaho sued Idaho's Governor, Brad Little, and Secretary of State, Lawrence Denney (collectively, the "State"), alleging that the State's strict enforcement of the In-Person Signature and Deadline Requirements during the COVID-19 pandemic violates the rights of Reclaim Idaho's members under the First and Fourteenth Amendments of the United States Constitution. Reclaim Idaho also asked the district court to enjoin the State from enforcing the In-Person Signature and Deadline Requirements by allowing it to gather signatures electronically past the May 1, 2020 deadline.

On June 23 and 26, 2020, the district court issued a preliminary injunction of the In-Person Signature and Deadline Requirements, requiring the State to either (1) allow Reclaim Idaho's Initiative on the ballot with the signatures gathered as of the day of the injunction, or (2) allow Reclaim Idaho an additional forty-eight (48) days

2

to collect signatures electronically with the assistance of DocuSign, a world leader in electronic signature gathering.

On July 30, 2020, the Supreme Court stayed the district court's preliminary injunction pending disposition of this appeal "and disposition of the petition for a writ of certiorari, if such writ is timely sought." *Little v. Reclaim Idaho*, No. 20A18, 2020 WL 4360897, at *1 (U.S. July 30, 2020). The practical effect of the stay is that even if we affirm the district court's injunction, the Supreme Court is not likely to lift the stay until after the September 7, 2020 deadline to place the Initiative on the November 2020 ballot, likely rendering this action moot as to this election cycle.

"We review questions of mootness de novo." *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we remand for further proceedings.

"Generally, a case is rendered moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002) (quoting *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000)). However, "a court is not precluded from exercising jurisdiction over an otherwise moot case where . . . the case is 'capable of repetition, yet evading review.'" *Id.* With this in mind, the Supreme Court has long established that courts "may exercise jurisdiction over [a challenge to an electoral restriction] if '(1) the challenged action [is] in its duration too short

to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (per curiam)). Accordingly, the Supreme Court and our circuit have decided the merits of numerous challenges to electoral restrictions after the elections took place because "[t]he short span of time between the filing deadline and the election makes [ ] challenge[s to election restrictions under the First Amendment] evasive of review." *Rubin*, 308 F.3d at 1013 (quoting *Schaefer*, 215 F.3d at 1033)).[1]

In *Meyer*, for example, the Supreme Court struck down Colorado's ban on paid circulators *after* the election period at issue. 486 U.S. at 417 n.2, 428. The Court reasoned that (1) it was unlikely that the plaintiffs could obtain a favorable ruling within the six-month period to gather signatures to place an initiative on the ballot in Colorado, and (2) the plaintiffs continued to advocate for the initiative's adoption and would attempt to obtain the necessary signatures to place the initiative on the ballot in future elections. *Id.* at 417 n.2. At oral argument, Reclaim Idaho's counsel confirmed that, like the plaintiffs in *Meyer*, Reclaim Idaho will attempt to

---

[1] *See, e.g.*, *Norman v. Reed*, 502 U.S. 279, 288 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.3 (1983); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Ariz. Green Party v. Reagan*, 838 F.3d 983, 987–88 (9th Cir. 2016); *Rubin*, 308 F.3d at 1012; *Schaefer*, 215 F.3d at 1033.

gather the necessary signatures to place the Initiative on the November 2022 ballot if the Supreme Court does not lift its stay in time to place it on the November 2020 ballot. Therefore, we must evaluate whether "it is reasonable to expect that the same controversy will recur between [Reclaim Idaho and the State], yet evade meaningful judicial review" if the pandemic continues unabated leading up to the next election cycle. *Meyer*, 486 U.S. at 417 n.2.

However, this mootness issue only arose on appeal as a result of the Supreme Court's recent stay of the district court's injunction, and the parties did not have an opportunity to brief or develop the record below on whether it is reasonable to expect that the same controversy will recur leading up to the November 2022 election. Because the district court is better positioned to evaluate factual nuances and disputes, we remand to allow the parties to develop the record and brief the district court on whether this controversy is "capable of repetition, yet evading review," and so the district court can decide this issue in the first instance.

**REMANDED with instructions.**[2] Each party shall bear its own costs.

---

[2] Our colleague dissents and invites us to "revisit [our] jurisprudence regarding ballot initiatives." We do not find it necessary to reach the merits, however, because we are remanding this action for the district court to determine whether the controversy between the parties is capable of repetition yet evading review.

FILED

*Reclaim Idaho v. Little et al.*, No. 20-35584
R. NELSON, Circuit Judge, dissenting:

SEP 1 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I respectfully dissent from our decision to remand. Both parties agree that

the issues underlying this appeal are moot, and I find no argument to the contrary.

Ultimately, because Reclaim Idaho has failed to gather the signatures necessary by

the district court's August 26 deadline, the preliminary injunction has expired on

its own terms. As the preliminary injunction is the only issue before us, there is no

longer a live controversy sufficient to support Article III jurisdiction over this

appeal. *See Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir.

2016).

No exception to mootness applies either. This preliminary injunction

presents no "exceptional situation[]" justifying an exception to mootness. *See*

*Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836–37 (9th Cir. 2014)

(citation omitted); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). The

unique confluence of factors giving rise to this as-applied challenge *might* occur

again, but a mere possibility is not enough to constitute a "reasonable expectation"

or "demonstrated probability" that "the same controversy will recur involving the

same complaining party." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463

(2007) (internal citations omitted). Perhaps the district court can address

Appellees' declaratory relief action, but as to the preliminary injunction, there is no

exception to mootness. Indeed, it is unprecedented to allow a preliminary

1

injunction to survive mootness when the sought-for equitable relief is no longer available. Rather than remand when it is clear no exception to mootness applies, I would dismiss this appeal as moot and remand for further proceedings related to the declaratory judgment pending before the district court.

Finally, I write separately to highlight our circuit's decision in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), and its potential incongruity with established First Amendment principles as recently signaled by four Justices of the Supreme Court. *See Reclaim Idaho*, 591 U.S. ___ (Roberts, C.J., concurring). Though we do not reach the merits here, I recommend reviewing *Angle* en banc in a future case.

## I

Appellee Reclaim Idaho ("Reclaim") challenged Idaho's signature and deadline ballot initiative requirements. Idaho's Constitution guarantees citizens the right to directly enact legislation through an initiative process and allows the State legislature to determine the "conditions and . . . manner" of that process. Idaho Const. art. III, § 1. By statute, initiative proponents must obtain signatures equivalent to at least six per cent of qualified electors during the prior election spread proportionally across each of the State's legislative districts. Idaho Code § 34-1805. Proponents have up to eighteen months prior to April 30 of the election year to collect and submit the necessary signatures. *Id.* § 34-1802(1). All

2

signatures must be collected in a petition circulator's presence. *Id.* § 34-1807. For Reclaim, this meant that it would need to gather and submit at least 55,057 signatures in person by April 30, 2020. The Idaho Secretary of State must certify ballot questions to the county clerks no later than September 7, 2020. *Id.* § 34-603.

Reclaim began the initiative process on August 30, 2019, and received approval for circulation on October 25, 2019, around six months before the submission deadline. By mid-February, Reclaim had collected approximately 15,000 signatures, and by mid-March that number had doubled.

On March 13, 2020, Idaho confirmed its first COVID-19 case, leading the Governor to issue a proclamation declaring a state of emergency. After losing volunteers who preferred not to gather signatures during the pandemic, Reclaim contacted offices of both the Idaho Governor and Secretary of State, requesting to gather the signatures electronically. In response, Idaho Appellants stated that they would not offer an accommodation and that in-person signatures would still be required. On March 18, Reclaim voluntarily suspended its campaign. On March 25, the Governor issued an order to self-isolate, requiring Idaho citizens to shelter in place. This order was extended to and ultimately expired on April 30.

Reclaim filed its complaint on June 6 (37 days after it was required to submit signatures with the Secretary of State). Specifically, it sought declaratory and preliminary injunctive relief, claiming the signature and deadline requirements,

3

*see id.* §§ 34-1802, 34-1807, as applied violated the First Amendment. The district court granted Reclaim's motion for a preliminary injunction, giving Idaho Appellants the option to either place the petition on the ballot or extend the signature deadline and suspend the in-person requirement. When Idaho Appellants refused either option, the district court ordered the State to extend the submission deadline to August 26 and allow signatures to be gathered electronically. On July 30, the Supreme Court stayed the district court's order pending final resolution, including any petition for a writ of certiorari. *Reclaim Idaho*, 591 U.S. ___.

## II

Remanding this case serves no purpose. Because the preliminary injunction has expired, this appeal must be dismissed as moot. The majority's decision to remand this case, especially when the parties have conceded mootness,[1] ignores the obvious realities of this case, and invites an unconstitutional advisory opinion contrary to Article III.

To retain jurisdiction over this appeal, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (internal citation omitted). When an

---

[1] Though the parties agree that the appeal is moot, we have "an independent obligation to consider mootness *sua sponte*." *Shell Offshore*, 815 F.3d at 628 (internal citation omitted).

actual controversy no longer exists, "the appellate court lacks jurisdiction and must dismiss the appeal." *Shell Offshore*, 815 F.3d at 628.

For preliminary injunctions specifically, the expiration of the injunction moots an appeal of that order. In *Shell Offshore*, the district court issued a preliminary injunction that expired on its own terms on November 1, 2015. *Id.* When no party sought to renew the injunction, we dismissed the appeal because "the only order on appeal [had] expired" and we were "unable to grant any effectual relief to either party." *Id.* As the parties no longer had a "continued, legally cognizable interest in the validity of the injunction" and no exception to mootness applied, we no longer had Article III jurisdiction to entertain the appeal. *Id.*; *cf. Paulson v. City of San Diego*, 475 F.3d 1047, 1048 (9th Cir. 2007) (dismissing appeal after legislative taking "divested City of any interest in the war memorial," rendering appeal moot).

The Supreme Court similarly recognized "when the injunctive aspects of a case become moot on appeal of a preliminary injunction," the appeal of the preliminary injunction is moot. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). Any remaining legal issues "must be resolved in a trial on the merits." *Id.* The Supreme Court reaffirmed this rule in *Honig v. Students of the California School for the Blind*, 471 U.S. 148, 149 (1985), dismissing an appeal of a

5

preliminary injunction as moot "because the terms of the injunction . . . ha[d] been fully and irrevocably carried out." Many other circuits have held similarly.[2]

Here, the district court's preliminary injunction was in force only until August 26, after which date the injunction "no longer constrains" the State to collect signatures beyond the statutory deadline. *See Shell Offshore*, 815 F.3d at 628. Like in *Shell Offshore*, the district court's order has expired "on its own terms," stripping our court of Article III jurisdiction over this appeal. *See* 815 F.3d at 628. Accordingly, I would dismiss the appeal. [3]

---

[2] *E.g.*, *Henco, Inc. v. Brown*, 904 F.2d 11, 13 (7th Cir. 1990) (dismissing appeal of preliminary injunction as moot "[b]ecause the preliminary injunction Brown appealed from expired under its own terms"); *Integrated Cash Mgmt. Servs,. Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 175 (2d Cir. 1990) (same); *see generally* 13C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.3.2 (3d ed. 2020) (collecting cases regarding mootness due to expired orders).

[3] On September 7, the preliminary injunction will become moot under Article III. On that date, the Idaho Secretary of State must certify ballots to county clerks, Idaho Code § § 34-603, making it impossible for any federal court to "affect the rights of litigants in the case before them." *Protectmarriage.com*, 752 F.3d at 834 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam)); *see also Bogaert v. Land*, 543 F.3d 862, 864 (6th Cir. 2008) (holding appeal of preliminary injunction that required placement of an issue on the ballot moot once ballots were sent to printer). On that date, no federal court—be it ours or the lower court—will have Article III jurisdiction over the injunction action, and it must be vacated and dismissed as moot. *See Nome Eskimo Cmty. v. Babbit*, 67 F.3d 813, 815 (9th Cir. 1995) (once case is moot, "the judicial branch loses its power to render a decision on the merits of the claim"). Even now, however, the injunction is *prudentially* moot because of the Supreme Court's stay. *See People Not Politicians Or. v. Clarno*, No. 20-35630 (9th Cir. Sept. 1, 2020) (R. Nelson, J., dissenting) (noting similar preliminary injunction was prudentially moot).

**III**

Because the injunction has expired, no mootness analysis is warranted. However, no "capable of repetition, yet evading review" exception to mootness applies either. "Because mootness concerns whether we have power to hear a case, we apply the capable of repetition, yet evading review exception sparingly, and only in 'exceptional situations.'" *Protectmarriage.com*, 752 F.3d at 836–37 (internal quotation marks omitted). An action qualifies as an "exceptional situation" under this exception where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. FEC*, 554 U.S. 724, 735 (2008) (quoting *Wis. Right to Life*, 551 U.S. at 462). Though the first prong may be met in this case, the second is certainly not. More fundamentally, the equitable nature of preliminary injunctions precludes any application of this exception absent some other legal issue to preserve the controversy. A court cannot balance equities that no longer exist.

**A**

As to the first prong, "the injury suffered must be so *inherently* limited in duration that the action will become moot before the completion of appellate review." *In re Di Giorgio*, 134 F.3d 971, 975 (9th Cir. 1998) (emphasis added). Courts have repeatedly held that challenges to election laws, and ballot initiative

7

requirements specifically, are often inherently limited in duration sufficient to satisfy the first prong. *See, e.g.*, *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (recognizing the exception in the ballot initiative context); *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007) (same).

I question, however, whether this injunction is so inherently limited in duration that any similar claim would face "imminent mootness," making it capable of being repeatedly and "irrevocably lost" without vindication. *See Singleton v. Wulff*, 428 U.S. 106, 117 (1976). Here, Reclaim's injury and First Amendment claims revolve around the inability to meet a deadline. Reclaim's inability to meet the deadline was "attributable at least in part," *Reclaim Idaho*, 591 U.S. ___, slip op. at 4 (Roberts, C.J., concurring), to its own decision to wait to file its lawsuit over a month after the submission deadline has already passed. Moreover, Reclaim suspended its campaign before it was legally required to do so, and could have started the ballot initiative process ten months earlier on October 30, 2018. Idaho Code § 34-1802(1).

I understand Reclaim was impacted by COVID-19 and decided to pattern its signature gathering efforts after its prior successful petition. But to claim this specific controversy—so integrally tied to the timing of Reclaim's start and late filing of the complaint—is "inherently limited" such that similar claims would face "imminent mootness" nears incredulity. As we underscored in

8

*Protectmarriage.com*, "the exception was designed to apply to situations where the type of injury involved *inherently* precludes judicial review, not to situations where review is precluded as a practical matter" due to the party's own late filing. 752 F.3d at 837 (alteration adopted) (emphasis added) (internal citation omitted).

**B**

Even if Reclaim satisfies the first prong, it cannot satisfy the second. It is not enough to demonstrate that it *might* be subject to the same injury again. To satisfy this prong, Reclaim would need to demonstrate a "reasonable expectation" or "demonstrated probability that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (internal quotation marks and citation omitted). It cannot meet that burden.

On remand, the majority asks the district court to develop further evidentiary findings as to whether Reclaim's preliminary injunction is moot or whether an exception applies. But what evidence can be developed? We would all love to know whether this pandemic will continue until July 2022, given the uncertainty that persists as COVID-19 disrupts our daily lives. But if the best and brightest scientific minds combating this pandemic cannot predict the future next month, the district court seems unable to offer any new revelation of what may be reasonably expected in two years. Reclaim simply cannot develop any evidentiary support on remand to meet the second *Davis* prong and acknowledged at oral arguments that

9

no such exception applies. To the contrary, Reclaim asserted that the controversy stemmed from a "once-in-a-century pandemic."

Even if Reclaim could demonstrate that the pandemic *may* extend through the 2022 election cycle, that is not enough—it must provide a "demonstrated probability." *See id.* True, the exception does not "[r]equir[e] repetition of every 'legally relevant' characteristic of an as-applied challenge—down to the last detail" since the circumstances must only be "materially similar." *Wis. Right to Life,* 551 U.S. at 463 (citation omitted). At a minimum, however, the "same controversy" must occur again. *See Murphy*, 455 U.S. at 482; *Lyons*, 461 U.S. at 109 (finding a reasonable expectation when a party "will again be subjected to the alleged illegality").

Here, the Governor's shelter-in-place mandate—the core state action impeding Reclaim from being able to collect signatures in person—is no longer in force and has not been since April 30. Furthermore, Reclaim's challenge is integrally tied to its inability to meet a deadline. Thus, to demonstrate a controversy "capable of repetition," Reclaim would need to show that a similar confluence of a world pandemic, executive action, and executive non-accommodation in the 2022 election would again inhibit it from meeting the April 30, 2022 deadline. *Contra Wis. Right to Life*, 551 U.S. at 463–64 (finding a reasonable expectation "where WRTL [already] sought another preliminary

10

injunction" for the next election cycle and "there is no reason to believe that the FEC will refrain from prosecuting violations of BCRA") (internal quotation marks and citation omitted)); *Davis*, 554 U.S. at 736 (finding a reasonable expectation because "the FEC conceded . . . that Davis'[s] § 319(a) claim would be capable of repetition"); *Citizens for Clean Gov't*, 474 F.3d at 650 (finding a reasonable expectation because the plaintiffs would "be subject to the same contribution limits"). This "once-in-a-century" controversy is just that—something courts will likely never see again.

## C

Assuming the district court on remand finds the injunction action qualifies as an exception to mootness, a more fundamental problem becomes clear: what remedy could the district court provide in the preliminary injunction context? At least in a declaratory judgment action, the district court (assuming an exception to mootness applies) could analyze alleged violations of legal rights. *See* Declaratory Judgment Act, 28 U.S.C. § 2201(a) (giving federal courts jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").[4] But in the preliminary

---

[4] Our court has often found that a demand for monetary damages can preserve a controversy past the extinguishment of equitable remedies. *See, e.g.*, *Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014) (dismissing as moot claims for declaratory and injunctive relief, but not claims for punitive and compensatory

injunction context, the court could only address a "*likelihood* of success on the merits," balancing that likelihood with equities that no longer exist in the real world.  *See Winter v. NRDC*, 555 U.S. 7, 24 (2008) (emphasis added).  There is simply no remedy that a court can provide in the preliminary injunction context, suggesting no exception to mootness applies.[5]

For this reason, no precedent exists recognizing an otherwise moot preliminary injunction as "capable of repetition, yet evading review."  This makes sense.  Preliminary injunctions are by definition an exercise of a court's equitable power and thus are inherently limited to the equitable remedies a court can provide.  For a case to qualify as an exception to mootness, at the very least there must be some remedy to be had; otherwise, a court would be exceeding its power under Article III's case-or-controversy limitation.  Thus, to find a case somehow excepted from mootness when it is inherently dependent upon equitable relief no longer available is to call for an impermissible advisory opinion.  Put simply,

---

relief); *cf. Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002) (holding that a plaintiff's claim for damages was not moot although the plaintiff's claim for prospective relief was); *see generally*, Wright & Miller, *supra*, at § 3533.3 ("The availability of damages or other monetary relief almost always avoids mootness[.]").  But Reclaim is not seeking monetary damages.
[5] To the extent Reclaim seeks relief from impending threats they may face in *future* elections, that claim is not ripe.  Without a "factual record of an actual or imminent application" of Idaho law that will likely prevent Reclaim from placing its initiative on the next election's ballot, such allegations would present "no ripe controversy."  *See Renne v. Geary*, 501 U.S. 312, 321–22 (1991).

preliminary injunctions providing specific relief (especially in the as-applied context) cannot qualify as an exception to mootness absent a separate legal remedy to preserve the controversy.

Courts have repeatedly recognized this jurisprudential truism. For instance, in *Southern Pacific Terminal*—the first case recognizing the "capable of repetition, yet evading review" exception—the Court distinguished its case from past cases where "the acts sought to be enjoined had been completely executed, and there was nothing that the judgment of the court, if the suits had been entertained, could have affected." 219 U.S. at 514–15. Though past cases were dismissed as moot for want of redressability, *Southern Pacific Terminal* involved "*rights* determined by the Commission without a chance of redress." *Id.* at 515 (emphasis added). Because "[t]he judgment of the court [was] sought upon the *question of the legality* of the [ICC orders]," the redressability of legal rights preserved the justiciability of the plaintiffs' suit. *Id.* (emphasis added).

This principle held true in *Moore v. Ogilvie*, 394 U.S. 814, 815 (1969), where candidates challenged an Illinois law, seeking declaratory and injunctive relief. Illinois urged dismissal on mootness grounds, arguing that "since the November 5, 1968, election has been held, there is no possibility of granting any relief to appellants[.]" *Id.* at 816. The Court rejected this argument, not because equitable relief could extend beyond the election deadline, but because "the [legal]

burden . . . placed on the nomination of candidates for statewide offices . . . remains and controls future elections[.]" *Id.* Again, the availability of legal relief allowed the case to exist beyond the extinguishment of equitable remedies.

Similarly, in *Wisconsin Right to Life*, the Supreme Court found the case "capable of repetition, yet evading review" in "consider[ing] the merits of WRTL's as-applied challenge in the first instance," *not* in analyzing WRTL's preliminary injunction. 551 U.S. at 460. The Court in *Davis* also found an exception to mootness when analyzing a facial challenge seeking *declaratory* relief even though Davis had also sought to enjoin the Federal Election Commission during the 2006 election. 554 U.S. at 731–32, 744–45. In each case, the availability of legal, not equitable, relief allowed the cases to extend beyond election deadlines. *See Moore*, 394 U.S. at 818–19 (overruling precedent); *Wisc. Right To Life*, 551 U.S. at 460–61 (finding the relevant statutory provision unconstitutional); *Davis*, 554 U.S. at 744–45 (same); *Meyer*, 486 U.S. at 428 (same).

Simply stated, "[i]t has long been settled that we have no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law *which cannot affect* the matter in issue in the case before us." *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) (emphasis added) (internal citation omitted). For injunctive relief specifically, once a court's ability

14

to provide equitable relief has passed, the case cannot survive mootness without contravening Article III.  Because on remand the district court "cannot affect the [preliminary injunction] before [it]," *id.*, the majority asks for nothing short of an impermissible advisory opinion.

*     *     *

As the only issue raised in this appeal is a claim for injunctive relief pertaining to the 2020 election, and as Reclaim cannot satisfy the second *Davis* prong, this case cannot qualify as an exception to mootness.  Accordingly, nothing preserves this appeal from being dismissed as moot.[6]

<strong>IV</strong>

One final thought.  Though we do not reach the merits of this case and the potential First Amendment implications because of mootness, our court may need to revisit its jurisprudence regarding ballot initiatives en banc in future cases. Chief Justice Roberts, joined by three Justices, identified a circuit split on this issue and signaled that the Ninth Circuit was on the wrong side.  *Reclaim Idaho*, 591 U.S. ___, slip op. at 2–3 (Roberts, C.J., concurring).  Siding with other circuits, the Chief Justice criticized our test in *Angle v. Miller* for "require[ing] scrutiny of the

---

[6] Likewise, nothing preserves the preliminary injunction from being vacated as moot on September 7.

15

interests of the State whenever a neutral, procedural regulation inhibits a person's ability to place an initiative on the ballot." *Id.* at 2.

I highlight the Chief Justice's remarks to encourage future evaluation of the legal test we adopted in *Angle*. First Amendment rights should be guarded vigorously against state encroachment. There is no question that "the First Amendment requires us to err on the side of protecting political speech rather than suppressing it." *Wis. Right To Life*, 551 U.S. at 457. But to err by infringing upon a state's "considerable leeway to protect the integrity and reliability of the initiative process," *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 191 (1999), when no speech rights have been severely burdened, *see Burdick v. Takushi*, 504 U.S. 428, 428 (1992), extends First Amendment protections far beyond their constitutional reach. The First Amendment has never required strict scrutiny in "the application of only the most typical sort of neutral regulations on ballot access." *Reclaim Idaho*, 591 U.S. ___, slip op. at 3 (Roberts, C.J., concurring).

The district court in this case applied *Angle*, finding strict scrutiny applicable where Idaho Appellants' "strict application of the statutory initiative conditions make or made it less likely" for Reclaim to get its initiative on the ballot. *Reclaim Idaho v. Little*, No. 1:20-cv-00268, 2020 WL 3490216, at *8 (D. Idaho June 26, 2020). If this is truly the test under *Angle*, it is discordant with established First

16

Amendment principles. Foundational to election law jurisprudence is the understanding that "[e]lection laws will invariably impose some burden upon individual voters." *Burdick*, 504 U.S. at 433. "[T]he mere fact that a State's system creates barriers . . . does not of itself compel close scrutiny." *Id.* (internal citation omitted). Instead, "close scrutiny" is appropriate only where speech rights "are subjected to 'severe' restrictions," *id.* at 433–34 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)), not merely when restrictions "make or made it less likely" for political groups to achieve their ends, *see Reclaim Idaho*, No. 1:20-cv-00268, 2020 WL 3490216, at *8. We apply this "severe restrictions" test in other contexts, *e.g.*, *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1090 (9th Cir. 2019) (ballot access), and ballot initiatives should be treated no different. *See Meyer*, 486 U.S. at 422 (finding petition circulation to be "core political speech"). If anything, ballot initiatives may be less likely to trigger close scrutiny as initiatives are "not . . . about the right to vote, but about how items are placed on the ballot in the first place. Nothing in the Constitution requires Idaho or any other State to provide for ballot initiatives." *Reclaim Idaho*, 591 U.S. ___, slip op. at 3 (Roberts, C.J., concurring).

Additionally, the district court applying *Angle* also found a likely First Amendment violation because Reclaim had been "reasonably diligent" in its efforts to collect signatures. The district court may have committed legal error by

17

focusing solely on Reclaim's individual efforts,[7] but at least one other district court has recently applied *Angle* in the same way. *See People Not Politicians Or. v. Clarno*, No. 6:20-cv-01053, 2020 WL 3960440, at *5 (D. Or. Jul. 13, 2020). But I can find no case in which First Amendment protections turn on whether the speaker was sufficiently diligent while engaged in expression. If *Angle* truly stands for how it is being applied—conditioning constitutional protections on the diligence of the speaker or mandating strict scrutiny of all laws imposing any burden on political speech—*Angle* must be revisited en banc in a future case and brought in line with fundamental First Amendment principles.

## V

I respectfully dissent. As the preliminary injunction has expired and no exception to mootness applies, our court no longer has Article III jurisdiction to hear this appeal. And because no exception to mootness applies here, the majority's remand serves no purpose. To that end, I would dismiss this appeal.

---

[7] The plainest reading of *Angle* suggests an objective, not subjective, test. *See Angle*, 673 F.3d at 1133 (measuring "whether, in light of the *entire statutory scheme* regulating ballot access, 'reasonably diligent' *candidates* can *normally* gain a place on the ballot, or whether they will rarely succeed in doing so") (emphasis added); *id.* at 1134 (finding plaintiffs assertions inadequate to demonstrate "they *and other* initiative proponents have been unable to qualify") (emphasis added).